E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
MARK A. WILLIAMS (Cal. Bar No. 239351)
DENNIS MITCHELL (Cal. Bar No. 116039)
DOMINIQUE CAAMANO (Cal. Bar No.301810)
Assistant United States Attorneys
Environmental and Community Safety Crimes Section
    1300 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-2484/0492
    E-mail:   dennis.mitchell@usdoj.gov
              dominique.caamano@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

FILED
CLERK, U.S. DISTRICT COURT

5/10/2023

CENTRAL DISTRICT OF CALIFORNIA
BY: ___jb___ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>           v.<br><br>TREVOR DANIEL JACOB,<br><br>        Defendant. | No. CR  2:23-cr-00221-JFW<br><br>PLEA AGREEMENT FOR DEFENDANT<br>TREVOR DANIEL JACOB |

    1.   This constitutes the plea agreement between Trevor Daniel Jacob ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case.  This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

DEFENDANT'S OBLIGATIONS

    2.   Defendant agrees to:

        a.   Give up the right to indictment by a grand jury and,

1  at the earliest opportunity requested by the USAO and provided by the

2  Court, appear and plead guilty to a single count information in the

3  form attached to this agreement as Exhibit A or a substantially

4  similar form, which charges defendant with destruction and

5  concealment of tangible object with intent to obstruct federal

6  investigation, in violation of 18 U.S.C. § 1519.

7           b.    Not contest facts agreed to in this agreement.

8           c.    Abide by all agreements regarding sentencing contained

9  in this agreement.

10          d.    Appear for all court appearances, surrender as ordered

11 for service of sentence, obey all conditions of any bond, and obey

12 any other ongoing court order in this matter.

13          e.    Not commit any crime; however, offenses that would be

14 excluded for sentencing purposes under United States Sentencing

15 Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not

16 within the scope of this agreement.

17          f.    Be truthful at all times with the United States

18 Probation and Pretrial Services Office and the Court.

19          g.    Pay the applicable special assessment at or before the

20 time of sentencing unless defendant has demonstrated a lack of

21 ability to pay such assessments.

                          THE USAO'S OBLIGATIONS

22

23    3.    The USAO agrees to:

24          a.    Not contest facts agreed to in this agreement.

25          b.    Abide by all agreements regarding sentencing contained

26 in this agreement.

27          c.    At the time of sentencing, provided that defendant

28 demonstrates an acceptance of responsibility for the offense up to

                                    2

1    and including the time of sentencing, recommend a two-level reduction

2    in the applicable Sentencing Guidelines offense level, pursuant to

3    U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an

4    additional one-level reduction if available under that section.

5            d.    Recommend that defendant be sentenced to a term of

6    imprisonment no higher than the low end of the applicable Sentencing

7    Guidelines range, provided that the offense level used by the Court

8    to determine that range is 15 or higher and provided that the Court

9    does not depart downward in offense level or criminal history

10   category.  For purposes of this agreement, the low end of the

11   Sentencing Guidelines range is that defined by the Sentencing Table

12   in U.S.S.G. Chapter 5, Part A, without regard to reductions in the

13   term of imprisonment that may be permissible through the substitution

14   of community confinement or home detention as a result of the offense

15   level falling within Zone B or Zone C of the Sentencing Table.

16                            NATURE OF THE OFFENSE

17       4.    Defendant understands that for defendant to be guilty of

18   the crime charged in the single count information, that is,

19   destruction and concealment of tangible object with intent to

20   obstruct federal investigation, in violation of Title 18, United

21   States Code, Section 1519. the following must be true: (1) defendant

22   knowingly altered, destroyed, concealed, or falsified a tangible

23   object; and (2) defendant acted with the intent to impede, obstruct,

24   or influence an actual or contemplated investigation of a matter

25   within the jurisdiction of any department or agency of the United

26   States.

27

28

PENALTIES

5. Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1519 is: 20 years imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

6. Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

7. Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition. Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license. Defendant understands that unanticipated

4

1   collateral consequences will not serve as grounds to withdraw

2   defendant's guilty plea.

3        8.   Defendant understands that, if defendant is not a United

4   States citizen, the felony conviction in this case may subject

5   defendant to: removal, also known as deportation, which may, under

6   some circumstances, be mandatory; denial of citizenship; and denial

7   of admission to the United States in the future.  The Court cannot,

8   and defendant's attorney also may not be able to, advise defendant

9   fully regarding the immigration consequences of the felony conviction

10  in this case.  Defendant understands that unexpected immigration

11  consequences will not serve as grounds to withdraw defendant's guilty

12  plea.

                            FACTUAL BASIS

14       9.   Defendant admits that defendant is, in fact, guilty of the

15  offense to which defendant is agreeing to plead guilty.  Defendant

16  and the USAO agree to the statement of facts provided below and agree

17  that this statement of facts is sufficient to support a plea of

18  guilty to the charge described in this agreement and to establish the

19  Sentencing Guidelines factors set forth in paragraph 11 below but is

20  not meant to be a complete recitation of all facts relevant to the

21  underlying criminal conduct or all facts known to either party that

22  relate to that conduct.

23       On November 24, 2021, defendant, an experienced pilot and sky

24  diver, took off in his Taylorcraft BL-65 airplane which bore Civil

25  Registration Number N 29508, from Lompoc City Airport on a solo

26  flight purportedly destined for Mammoth Lakes, California.  However,

27  defendant did not intend to reach that destination.  Instead,

28  pursuant to a scheme to gain notoriety and to make money, defendant

1    planned to eject from his airplane during the flight and to video

2    himself parachuting to the ground and his airplane as it descended

3    and crashed.

4         Prior to taking off, defendant mounted several video cameras on

5    different parts of the airplane and equipped himself with a

6    parachute, video camera, and a selfie stick.  Approximately 35

7    minutes after taking off, while flying above the Los Padres National

8    Forest, near Santa Maria, California, defendant ejected from the

9    airplane, and videoed himself as he parachuted to the ground.  Using

10   the video camera mounted on the selfie stick and the video cameras

11   mounted on the airplane, defendant was able to record the airplane as

12   it crashed into a dry brush area within Los Padres National Forest.

13        After parachuting to the ground, defendant hiked to the location

14   of the wreck and recovered the data containing the video recording of

15   defendant's flight and the crash of the airplane.

16   **LAUNCH OF FEDERAL INVESTIGATIONS**

17        On November 26, 2021, defendant informed the National

18   Transportation Safety Board ("NTSB"), an agency of the United States,

19   about the crash of his airplane.  On or about that same date, the

20   NTSB launched an investigation into the crash, and NTSB Senior

21   Aviation Accident Investigator E.S. interviewed defendant by

22   telephone.  During that interview, Investigator E.S. told defendant

23   that defendant was responsible for preserving the wreckage and that

24   the NTSB would need to see the wreckage.  Investigator E.S.

25   emphasized to defendant that the focus was on identifying the

26   location of the wreckage before he could give defendant further

27   instructions.  At the end of that interview, defendant agreed that he

28   would determine the location of the crash and provide it to

Investigator E.S.  Defendant also agreed to provide Investigator E.S.
with videos of the accident.

On or about November 29, 2021, the Federal Aviation
Administration ("FAA"), an administration in the United States
Department of Transportation, also launched an investigation into the
November 24, 2021, crash of defendant's airplane.

**DEFENDANT'S CONCEALED RECOVERY AND DESTRUCTION OF THE AIRPLANE WRECKAGE**

On or about November 30, 2021, Investigator E.S. followed-up
with defendant and asked defendant, by email, if defendant knew the
longitude and latitude coordinates for the aircraft wreckage.
Approximately an hour and a half later, defendant responded by email,
stating that he did not have the coordinates and was still trying to
figure out exactly where the wreck was located.  Subsequently, on
January 3, 2022, Investigator E.S. again emailed defendant and, among
other things, asked, "Has the wreckage been recovered, if so, where
is it?"  The following day, defendant responded by email and falsely
stated, "Also, I am not aware of the plane location."

Despite defendant's claim that he was not aware of the plane
wreckage location, defendant, in fact, had previously found the
wreckage and had removed it from the crash site.  In early December
2021, defendant contacted a helicopter company in Paso Robles,
California, and asked the owner of that company, S.S., if he could
help defendant retrieve his airplane.

Thereafter, on or about December 10, 2021, S.S. picked up
defendant and defendant's friend in a helicopter at Rancho Sisquoc in
Santa Maria, California.  Defendant and his friend had each driven a
pick-up truck to that location.  Defendant informed S.S. of the

location of the plane wreckage, and they flew to the site of the wreckage. There, defendant ███████ secured the wreckage with straps, and the helicopter subsequently lifted the wreckage, carried it to the Rancho Sisquoc location, and loaded it into the trailer of defendant's pick-up truck.

Defendant, followed by his friend, then drove the wreckage to the Lompoc City Airport and unloaded the wreckage into a hangar used by defendant. Thereafter, defendant cut up and destroyed the airplane wreckage and, over the course of a few days, deposited the detached parts of the wrecked aircraft into trash receptacles at the airport and elsewhere.

Defendant took apart the airplane and deposited its parts in trash receptacles with the intent to impede and obstruct Federal authorities, namely, the FAA and/or NTSB from being able to inspect the wreckage as part of their investigation into the November 24, 2021, crash of defendant's airplane.

**DEFENDANT'S PLAN TO MAKE MONEY FROM POSTING A VIDEO OF THE NOVEMBER 24, 2021, FLIGHT**

Prior to defendant's flight on November 24, 2021, defendant had secured a sponsorship from a company that sold various products, including a wallet. Pursuant to that sponsorship deal, defendant would promote the company's wallet in the video to be posted by defendant on YouTube. Defendant intended to make money by promoting the wallet in the video that would depict, among other things, defendant parachuting from the airplane, and the airplane descending and crashing.

Consequently, on or about December 23, 2021, defendant uploaded a video on YouTube that contained a promotion of the wallet and video

8

1   of, among other things: (1) defendant piloting the airplane; (2)

2   defendant exiting the airplane and parachuting to the ground; and (3)

3   the crash of the airplane.

4   **OTHER FALSE STATEMENTS BY DEFENDANT TO CONCEAL HIS SCHEME**

5       Prior to removing his airplane from the crash site and

6   destroying it, defendant had also made false statements to federal

7   authorities to impede the NTSB's and/or FAA's investigation into the

8   crash.  For example, on or about November 30, 2021, defendant

9   completed and submitted an NTSB Pilot/Operator Aircraft Accident

10   Incident Report.  In that report, defendant falsely indicated that he

11   had experienced a full loss of power approximately 35 minutes after

12   taking off.

13       In addition, on December 2, 2021, during a phone interview with

14   FAA Aviation Safety Inspector E.B., defendant falsely stated that the

15   airplane engine had quit, and, because defendant could not identify

16   any safe landing options, defendant parachuted out of the airplane.

17       Defendant knowingly made those false statements in order to

18   conceal the fact that he had purposely abandoned his airplane in

19   flight as part of his scheme to create a video to gain notoriety and

20   to make money.

21   SENTENCING FACTORS

22       10.  Defendant understands that in determining defendant's

23   sentence the Court is required to calculate the applicable Sentencing

24   Guidelines range and to consider that range, possible departures

25   under the Sentencing Guidelines, and the other sentencing factors set

26   forth in 18 U.S.C. § 3553(a).  Defendant understands that the

27   Sentencing Guidelines are advisory only, that defendant cannot have

28   any expectation of receiving a sentence within the calculated

9

1  Sentencing Guidelines range, and that after considering the

2  Sentencing Guidelines and the other § 3553(a) factors, the Court will

3  be free to exercise its discretion to impose any sentence it finds

4  appropriate up to the maximum set by statute for the crime of

5  conviction.

6      11.  Defendant and the USAO agree to the following applicable

7  Sentencing Guidelines factors:

| | | | |
|---|---|---|---|
| Base Offense Level: | 14 | U.S.S.G. § 2J1.2(a) | |
| Specific Offense Characteristics: (Selection of essential or especially probative object and extensive planning/preparation) | +2 | U.S.S.G. § 2J1.2(b)(3)(B) and(C) | |

13     12.  Defendant understands that there is no agreement as to

14 defendant's criminal history or criminal history category.

15     13.  Defendant and the USAO reserve the right to argue for a

16 sentence outside the sentencing range established by the Sentencing

17 Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1),

18 (a)(2), (a)(3), (a)(6), and (a)(7).  The USAO also reserves the right

19 to argue that a two-level upward adjustment for aggravated role under

20 U.S.S.G. § 3B1.1(c) should be applied in calculating the applicable

21 Sentencing Guidelines range, and that, as a condition of probation or

22 supervised release, defendant shall be prohibited from applying for

23 any type of pilot license.

                        WAIVER OF CONSTITUTIONAL RIGHTS

25     14.  Defendant understands that by pleading guilty, defendant

26 gives up the following rights:

27          a.   The right to persist in a plea of not guilty.

28          b.   The right to a speedy and public trial by jury.

                                  10

c.    The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

d.    The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.    The right to confront and cross-examine witnesses against defendant.

f.    The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.    The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.    Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

### WAIVER OF APPEAL OF CONVICTION

15.    Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that

1    the statement of facts provided herein is insufficient to support

2    defendant's plea of guilty.

3                LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

4         16.   Defendant agrees that, provided the Court imposes a total

5    term of imprisonment on all counts of conviction of no more than 24

6    months, defendant gives up the right to appeal all of the following:

7    (a) the procedures and calculations used to determine and impose any

8    portion of the sentence; (b) the term of imprisonment imposed by the

9    Court; (c) the fine imposed by the Court, provided it is within the

10   statutory maximum; (d) to the extent permitted by law, the

11   constitutionality or legality of defendant's sentence, provided it is

12   within the statutory maximum; (e) the term of probation or supervised

13   release imposed by the Court, provided it is within the statutory

14   maximum; and (f) any of the following conditions of probation or

15   supervised release imposed by the Court: the conditions set forth in

16   Second Amended General Order 20-04 of this Court; the drug testing

17   conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); the

18   alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7);

19   and the prohibition that defendant shall not apply for a pilot

20   license of any type during the term of probation or supervised

21   release.

22        17.   The USAO agrees that, provided (a) all portions of the

23   sentence are at or below the statutory maximum specified above and

24   (b) the Court imposes a term of imprisonment of no less than 18

25   months, the USAO gives up its right to appeal any portion of the

26   sentence.

27

28

RESULT OF WITHDRAWAL OF GUILTY PLEA

18.   Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge or any civil, administrative, or regulatory action that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

RESULT OF VACATUR, REVERSAL OR SET-ASIDE

19.   Defendant agrees that if the count of conviction is vacated, reversed, or set aside, both the USAO and defendant will be released from all their obligations under this agreement.

EFFECTIVE DATE OF AGREEMENT

20.   This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

BREACH OF AGREEMENT

21.   Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant

13

United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea, and (b) the USAO will be relieved of all its obligations under this agreement.

22.  Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge or any civil, administrative, or regulatory action that was either dismissed or not filed as a result of this agreement, then:

a.  Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.  Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.  Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action

14

against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

<u>COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES</u>

<u>OFFICE NOT PARTIES</u>

23.   Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

24.   Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 11 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this

1   paragraph does not affect defendant's and the USAO's obligations not

2   to contest the facts agreed to in this agreement.

3         25.   Defendant understands that even if the Court ignores any

4   sentencing recommendation, finds facts or reaches conclusions

5   different from those agreed to, and/or imposes any sentence up to the

6   maximum established by statute, defendant cannot, for that reason,

7   withdraw defendant's guilty plea, and defendant will remain bound to

8   fulfill all defendant's obligations under this agreement.   Defendant

9   understands that no one -- not the prosecutor, defendant's attorney,

10  or the Court -- can make a binding prediction or promise regarding

11  the sentence defendant will receive, except that it will be within

12  the statutory maximum.

13                      NO ADDITIONAL AGREEMENTS

14        26.   Defendant understands that, except as set forth herein,

15  there are no promises, understandings, or agreements between the USAO

16  and defendant or defendant's attorney, and that no additional

17  promise, understanding, or agreement may be entered into unless in a

18  writing signed by all parties or on the record in court.

19          PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

20  The parties agree that this agreement will be considered

21

22

23

24

25

26

27

28

1  part of the record of defendant's guilty plea hearing as if the

2  entire agreement had been read into the record of the proceeding.

3  AGREED AND ACCEPTED

4  UNITED STATES ATTORNEY'S OFFICE
   FOR THE CENTRAL DISTRICT OF
5  CALIFORNIA

6  E. MARTIN ESTRADA
   United States Attorney

7

8  _____                    5-5-23
                                                 _____
9  DENNIS MITCHELL                               Date
   Assistant United States Attorney

10 _____                    4-25-2023
                                                 _____
   TREVOR DANIEL JACOB                           Date
11 Defendant

12 _____                    8/1/2023
                                                 _____
   KERI CURTIS AXEL                              Date
13 Attorney for Defendant TREVOR
   DANIEL JACOB

14

15

16              CERTIFICATION OF DEFENDANT

17       I have read this agreement in its entirety.  I have had enough

18  time to review and consider this agreement, and I have carefully and

19  thoroughly discussed every part of it with my attorney.  I understand

20  the terms of this agreement, and I voluntarily agree to those terms.

21  I have discussed the evidence with my attorney, and my attorney has

22  advised me of my rights, of possible pretrial motions that might be

23  filed, of possible defenses that might be asserted either prior to or

24  at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

25  of relevant Sentencing Guidelines provisions, and of the consequences

26  of entering into this agreement.  No promises, inducements, or

27  representations of any kind have been made to me other than those

28  contained in this agreement.  No one has threatened or forced me in

                              17

1   any way to enter into this agreement.  I am satisfied with the

2   representation of my attorney in this matter, and I am pleading

3   guilty because I am guilty of the charge and wish to take advantage

4   of the promises set forth in this agreement, and not for any other

5   reason.

6   _____          4-25-2023
                                               _____
7   TREVOR DANIEL JACOB                         Date
    Defendant

8

9               CERTIFICATION OF DEFENDANT'S ATTORNEY

10      I am TREVOR JACOB's attorney.  I have carefully and thoroughly

11  discussed every part of this agreement with my client.  Further, I

12  have fully advised my client of his rights, of possible pretrial

13  motions that might be filed, of possible defenses that might be

14  asserted either prior to or at trial, of the sentencing factors set

15  forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

16  provisions, and of the consequences of entering into this agreement.

17  To my knowledge: no promises, inducements, or representations of any

18  kind have been made to my client other than those contained in this

19  agreement; no one has threatened or forced my client in any way to

20  enter into this agreement; my client's decision to enter into this

21  agreement is an informed and voluntary one; and the factual basis set

22  forth in this agreement is sufficient to support my client's entry of

23  a guilty plea pursuant to this agreement.

24  _____          5/1/2023
                                               _____
25  KERI CURTIS AXEL                            Date
    Attorney for Defendant TREVOR
26  DANIEL JACOB

27

28

                              18